# IN THE COURT OF APPEALS OF IOWA

No. 14-1158
Filed March 23, 2016

**BELLE OF SIOUX CITY, L.P.,**
    Petitioner-Appellant,

**vs.**

**IOWA RACING AND GAMING COMMISSION, SCE PARTNERS, L.L.C., and MISSOURI RIVER HISTORICAL DEVELOPMENT, INC.,**
    Respondents-Appellees.

_____

**BELLE OF SIOUX CITY, L.P.,**
    Petitioner-Appellant,

v.

**IOWA RACING AND GAMING COMMISSION, SCE PARTNERS, L.L.C., MISSOURI RIVER HISTORICAL DEVELOPMENT, INC., and CITY OF SIOUX CITY,**
    Respondents-Appellees.

_____

Appeal from the Iowa District Court for Polk County, Eliza Ovrom, Judge.

In a consolidated appeal, a riverboat casino operator challenges the orders of the district court on judicial review of the Iowa Racing and Gaming Commission's decision not to renew the operator's license and its decision to award a license to a different operator for a new land-based casino. **AFFIRMED.**

Mark E. Weinhardt and Danielle M. Shelton of Weinhardt & Logan, P.C., Des Moines, for appellant Belle of Sioux City, L.P.

Thomas J. Miller, Attorney General, and Jeffrey C. Peterzalek and John R. Lundquist, Assistance Attorneys General, for appellee Iowa Racing and Gaming Commission.

Guy R. Cook, of Grefe & Sidney, P.L.C., Des Moines, for appellee SCE Partners, L.L.C.

Douglas L. Phillips and Ryland Dienert of Klass Law Firm, L.L.P., Sioux City, for appellee Missouri River Historical Development, Inc.

Nicole Jensen-Harris, City Attorney, and Justin Vondrak, Assistant City Attorney, Sioux City, for appellee City of Sioux City.


Heard by Danilson, C.J., and Vogel and Potterfield, JJ.

**POTTERFIELD, Judge.**

In this consolidated appeal, Belle of Sioux City, L.P. (Belle) seeks appellate review of multiple actions taken by the Iowa Racing and Gaming Commission (IRGC) regarding Belle's license to operate the Argosy casino at its regularly scheduled meetings in 2012 and after a contested hearing in 2014, and regarding the 2013 award by the IRGC of a license to appellee SCE Partners, L.L.C. (SCE) to operate a land-based casino. The facts include Belle's efforts to renew its license for the operation of the Argosy riverboat casino and its contemporaneous proposals for the building and operation of a new land-based casino—proposals in competition with other entities. The typical timeline for license renewals by the IRGC is that the application is filed in December, a decision is made by the IRGC in March, and a licensure period occurs from April 1st through March 31st. The license for the new land-based casino was awarded in April 2013 to SCE for its proposed Hard Rock Casino.

In this appeal from two separate rulings on judicial review, Belle maintains the IRCG's award of a new casino license to another applicant violated Iowa Code section 99F.7(2)(c) (2013)—a statute Belle argues was meant to protect incumbent licensees such as itself. Additionally, Belle maintains the IRGC violated Belle's right to due process in its decisions to award another applicant a new gambling license for a land-based casino and to deny renewal of Belle's license for the Argosy riverboat casino. The appellees respond that Iowa Code section 99F.7(2)(c) is not applicable to Belle because it was no longer licensed to operate the riverboat casino at the time the IRGC awarded the new land-based casino license. In the alternative, the appellees maintain that even if Belle was

licensed at the time, the statute was inapplicable because Belle is an operator rather than conductor of a gambling operation.[1]

## I. Background Facts and Proceedings.

First, a brief overview: The IRGC is responsible for supervising all gambling operations at gambling structures and on excursion boats in the state of Iowa. Iowa Code § 99F.4. As part of that responsibility, the IRGC is tasked with "investigat[ing] applicants and determin[ing] the eligibility of applicants for a license and . . . select[ing] among competing applicants for a license the applicant which best serves the interests of the citizens of Iowa." *Id.* § 99F.4(1). A qualified sponsoring organization (QSO)[2] may apply to the commission for a license to conduct gambling games. *Id.* § 99F.5(1). Once licensed, the QSO may operate the gambling games itself or it may contract with another person or entity to operate the games. Iowa Admin. Code r. 491-1.5(1). The operating

---

[1] This appeal included six appendices, one of which included 353 pages identified simply as "Relevant Pages of Certified Agency Record." *See* Iowa R. App P. 6.905(4)(a) ("The appendix shall include a table of contents identifying each part of the record included and disclosing the page number at which each part begins in the appendix."); *see also id.* 6.905(4)(c) ("If exhibits are included in the appendix, the table of contents shall identify each exhibit by the number or letter with which it was marked in the district court, give a concise description of the exhibit (*e.g.*, "warranty deed dated ...";  "photograph of construction site"; "Last Will and Testament executed on ..."), and state the page number at which the exhibit appears in the appendix."). Although these violations may seem inconsequential, compliance with the rules facilitates efficient navigation through an appendix, thus fostering our duty to achieve maximum productivity in deciding a high volume of cases. *See* Iowa R. Civ. P. 21.11.

[2] A "qualified sponsoring organization" is defined as:
> [A] nonprofit corporation organized under the laws of this state, whether or not it is exempt from federal income taxation, or a person or association that can show to the satisfaction of the commission that the person or association is eligible for exemption from federal income taxation under section 501(c)(3), 501(c)(4), 501(c)(5), 501(c)(6), 501(c)(7), 501(c)(8), 501(c)(10), or 501(c)(19) of the Internal Revenue Code as defined in section 422.3.

Iowa Code § 99F.1(20).

agreement must be approved by the IRGC, Iowa Code § 99F.7(3)(a), and the operator must also be licensed by the IRGC. Iowa Code § 99F.5(1).

Missouri River Historical Development, Inc. (MRHD) is a nonprofit corporation and a QSO. It was first licensed to conduct gambling at a riverboat in Sioux City in 1992. In 2004, MRHD entered into an operating agreement with Belle for the Argosy riverboat, and the IRGC licensed Belle to operate the games. Belle and MRHD extended their operating agreement multiple times, with the final extension running until July 6, 2012.

In December 2011, Belle and MRHD filed their license renewal application for the period of April 1, 2012 to March 31, 2013. On the front page of the application, the parties "acknowledge[d] that they currently have an operating agreement in effect through July 6, 2012 as provided herein and that renewal or extension of an operating agreement pursuant to Iowa Code Chapter 99F through the applicable time period of the requested license is necessary." They further indicated "that negotiations to complete the terms of that agreement/extension are ongoing and they have reason to believe that the same will be finalized on or before the meeting of the [IRGC] on March 8, 2012," when the matter of the license renewal application was to come before the commission for action.

At the March 8, 2012 meeting of the commission, Belle and MRHD were unable to present a finalized extension of the operating agreement. MRHD's representative requested a one-year license with the understanding that it would be conditioned upon an extension of the operating agreement. The process of negotiating a new operating agreement for the Argosy license had been slowed

by both Belle and MRHD's desire to build a new land-based casino in the county. According to the minutes from the meeting, one commission member "encouraged the parties to reach an agreement" because "the alternative is not good for anyone." The administrator of the IRGC told the parties, "If there is no agreement between the qualified sponsoring organization and the operator, and the citizens have made it clear that they want gambling in the city/county, the Commission would be obligated to look elsewhere." The commission conditionally approved the license renewal for MRHD and Belle's Argosy license until June 7, 2012. The parties were to submit a new operating agreement to the IRGC by June 7, 2012.

At the April 19, 2012 meeting, the parties had not reached an agreement. Commissioner Lamberti expressed concern about the 325 jobs of casino workers that were in jeopardy if a decision was not reached soon. MRHD reiterated that it had offered Belle an extension of the current operating agreement, but Belle had refused to accept the extension.

At the June 7, 2012 meeting, Belle reported to the commission that MRHD had offered Belle a two-and-a-half-year extension. However, Belle believed the offer was "misleading" because MRHD had filed a lawsuit against it. According to the minutes from the meeting, Belle had advised MRHD that without dismissal of the lawsuit against it, it "could not see a partnership between the parties nor a stable base on which to move forward with any future investment." Belle indicated it believed MRHD was attempting to replace it with a different operator. Belle asked the IRGC to extend its current license for the Argosy until the July 6, 2012 expiration date and then renew its license with a different QSO, Friends of

Woodbury County. MRHD then advised the IRGC it had signed an extension agreement on May 24, 2012, that would carry its collaboration with Belle regarding the Argosy through March 2015. Vice Chair Lamberti indicated this was a "unique and difficult situation which the Commission has not previously faced where there is a license running and no operating agreement in place." He then announced that because the Argosy license was about to expire, "the best way to move forward is to consider other alternatives, but that it needs to be broader than what has been proposed" to that point. Lamberti moved to open up the process for new applications to build and operate a land-based facility in Woodbury County.[3] The commission voted to extend the parties' Argosy license through March 31, 2013, on the condition that the parties extended their operating agreement through that time. March 31, 2013 was the usual end of the license period running from April 1, 2012 through March 31, 2013. Sometime after the meeting, Belle also signed the extension agreement, which extended the Argosy operating agreement with MRHD until March 31, 2015, "subject to the approval of the Iowa Racing and Gaming Commission."

At this June 2012 meeting, the commission announced its commitment to keeping the riverboat facility open until a land-based facility could be licensed. Commissioner Heinrich clarified that the licensing for the land-based casino was open to both Belle and MRHD as well as any other potential operators and non-profits.

---

[3] Belle reiterated its plan to be part of a new land-based casino in Sioux City and stated it was looking "forward to a solid partnership with whoever is willing to accept their $100 million investment."

Following the June meeting, Belle filed its first petition for judicial review, which asserted the IRGC's decision to accept new applications to build and operate a land-based casino in Woodbury County violated Belle's right to due process.

At the July 12, 2012 meeting, Belle and MRHD asked the IRGC to approve the extension to their operating agreement for the Argosy. The commission expressed concern about the "arbitrary" date of March 2015 and instead asked Belle and MRHD to agree to an extension only through March 31, 2013, "which would tie the date to the license date." MRHD agreed but Belle declined. Belle reiterated that the IRGC should approve the longer extension to 2015 in order to "provide some security for the employees" and acknowledged that even if the extension was approved, licensing would follow its ordinary course in the discretion of the commission in March 2013. The parties did not come to an agreement about the extension date, so the IRGC approved an extension of the Argosy license to March 31, 2013, conditioned on an agreement of the parties by August 23, 2012. The parties were given thirty days from the execution of the contract to seek approval from the IRGC for the continued operation of the Argosy. Before the meeting concluded, the IRGC also set a timeline for the commission to decide and award a gambling license for the new land-based casino.

Following the July meeting, Belle filed a second petition for judicial review, which asserted that the IRGC's refusal to approve the new operating agreement between Belle and MRHD for the Argosy and its adoption of a timeframe and

procedures for awarding the new license to build and operate a land-based casino in Woodbury County violated Belle's right to due process.

The parties did not agree to a March 31, 2013 extension before the August 2012 meeting—and in fact never agreed to it. At the August 23, 2012 meeting, Belle once again presented the signed March 31, 2015 extension agreement to the IRGC for approval. Belle opined that the commission could approve the signed extension but could limit the length of the extension by using its authority to place a duration condition on the approval. In response, MRHD told the commission that it did not feel there was an agreed-upon extension between the two parties. Vice Chair Seyfer stated that without an agreed-upon extension there was no operating agreement, and without an operating agreement, the IRGC could not issue a license to conduct gambling games. He then stated that the situation was governed by Iowa Code section 17A.18 and, as such, the license would continue by operation of law until the IRGC took action.

Following the August meeting, Belle filed a third petition for judicial review, which again asserted that the IRGC's refusal to approve the new operating agreement between Belle and MRHD and the additional steps the commission took toward awarding the new license to build and operate a land-based casino in Woodbury County violated Belle's right to due process. The district court consolidated the three petitions.

Leading up to the November 5, 2012 meeting of the IRGC, the commission received four proposals for a new land-based casino in Woodbury County. Belle had partnered with a new non-profit and submitted two proposals.

Similarly, MRHD partnered with a new operator, SCE Partners, L.L.C., and submitted one proposal.

In December 2012, Belle's legal counsel contacted the IRGC administrator asserting there was no need for Belle to submit a renewal application for the Argosy license for the 2013-2014 licensing period. The commission's administrator agreed with Belle's assertion that it was "not expected to file" because the "Argosy has a license of operation by law." Nevertheless, Belle filed a license renewal application for April 1, 2013 through March 31, 2014. On the cover of the application, Belle acknowledged that "[t]he documents requested in Section VI(F) with regard to the qualified sponsoring organization are not included in this submission." Additionally, MRHD did not join in the application—Belle listed MRHD as the applicant for the QSO, but no agent for MRHD signed the application. MRHD's president would later testify it was an intentional choice of MRHD not to join the application.

At the April 18, 2013 meeting, the IRGC announced the award of the license for the new land-based casino. Chair Lamberti noted that the commission had been presented with four good projects, all of which met the statutory requirements for licensure. He indicated the commission had made the difficult decision only after completing the process that had been outlined at the July 2012 meeting, which included: application submissions, presentations, site visits, public hearing, and a question-and-answer session. The IRGC ultimately voted 3-to-2 to approve the Hard Rock project, which involved awarding SCE Partners, L.L.C. a license to operate a gambling structure and MRHD a license to conduct gambling games.

Following the meeting, in May 2013, Belle filed its fourth petition for judicial review, which asserted that the IRGC had "engaged in a series of actions that . . . destroyed the economic value of the Belle's license and the Belle's investment in Argosy Casino and in the Sioux City community." Belle maintained the commission's decision to award SCE a new gaming license "de facto revoked [Belle's] gaming license without cause" and that it was a violation of Belle's right to due process. Belle never requested a contested case hearing regarding these complaints.

The IRGC formally denied Belle's 2013–2014 application for its Argosy license renewal at the August 15, 2013 meeting. Written notice of the decision was issued to Belle by IRGC Administrator Ohorilko on August 27, 2013. The notice explained that Belle's renewal application had been denied because Belle had submitted its application to renew its Argosy license to the IRGC without the consent of the MRDH, which it had listed as the QSO. Additionally, because a casino operator was statutorily required to partner with a QSO and Belle no longer had an approved operating agreement with a QSO, Belle was "no longer statutorily eligible to operate the Argosy casino." Belle requested a contested case proceeding and evidentiary hearing of the IRGC's decision to deny its renewal application.

A contested case hearing was held before the IRGC on March 5–6, 2014, with the assistance of an administrative law judge who was assigned to help with prehearing matters and to assist with the drafting of the ruling. On April 17, 2014, the IRGC filed its findings of fact, conclusions of law, decision and order, in which it denied Belle's renewal application. The commission again stated that

neither MRHD nor any other QSO joined Belle's renewal application for the 2013–2014 term, and the IRGC could not "ignore the deficiencies in the Belle's application for renewal of its license to operate the Argosy Casino for the 2013–2014 licensing year." The decision also stated:

> In August 2012 and during the months that followed, the Commission and the parties assumed that the Argosy Casino licenses remained in effect by operation of law under [section 17A.18(2)]. The Commission may have erred in allowed gambling to continue at the Argosy Casino, but if so, the error was harmless: employees of the casino continued working, patrons continued to frequent the excursion boat; three percent of the adjusted receipts continued to be distributed for educational and charitable purposes; and Belle . . . continued to generate profits.

The Argosy was ordered to be closed on or before July 1, 2014.

Belle filed a timely petition for judicial review of the contested case decision,[4] and on July 14, 2014, the district court ruled on the merits and dismissed the petition. The court ruled Belle had failed to prove that the IRGC's decision to deny Belle's application for renewal of its Argosy license violated Iowa Code section 17A.19(10)(i), (j), (m), or (n). Additionally, the court found that the commission was not entitled to deference for its interpretation of Iowa Code section 17A.18(2), but the IRGC's interpretation was correct and the section had not been triggered by Belle's "insufficient" renewal application. Additionally, the

---

[4] Multiple times during the proceedings, Belle has requested stays and hearings have been heard on the matter. At one of these hearings, the district court ruled that SCE, MRHD, and the City of Sioux City should be allowed to intervene. Additionally, Belle has filed a bankruptcy action in Pennsylvania where its parent company is headquartered and has another pending action in which Belle is suing MRHD for breach of contract. None of these ancillary proceedings are the subject of this appeal.

court concluded Belle was not denied due process concerning the IRGC's decision not to renew Belle's gambling license for the 2013–2014 term.[5]

In a separate proceeding, the district court consolidated Belle's May 2013 petition for judicial review with the other previously consolidated petitions. A hearing was held on the merits of the petitions. On November 6, 2014, the district court filed a ruling dismissing Belle's consolidated petitions for judicial review. The court ruled that the IRGC did not violate Iowa Code section 99F.7(2)(c) when granting a new license for a land-based casino because (1) Belle did not have a valid operating license at the time the new license was issued, and (2) even if it was licensed, the section is only applicable to conductors of gambling games and not to operators, like Belle. Additionally, the court concluded that Belle's argument it was denied due process because it was "entitled to an evidentiary hearing before the Commission concerning the decision in June 2012 not to renew the licenses for the Argosy casino" was without merit. The court noted that Belle never requested a contested case hearing on these matters. Instead, it "chose to file petitions in court" because its "strategy was to obtain a temporary stay of the Commission's actions in court." Moreover, the court concluded:

> There has been much litigation in court in this case, including two hearings concerning a temporary stay of the Commission's decision at its June 12, 2012 meeting. The merits of Belle's arguments have been addressed in the court's rulings on those matters. These hearings preceded any final order to close the Argosy casino. This court and the Iowa Supreme Court have provided expedited proceedings when requested by Belle in this

---

[5] Belle complained about the narrow focus of the decision, but Belle only requested a contested case hearing on the denial of its application submitted in December 2012.

action and the separate judicial review action. Belle has received due process concerning the instant case.

Belle appealed from the judicial review decision filed on July 14, 2014, as well as the judicial review decision filed November 6, 2014. The appeals were consolidated and our supreme court transferred the case to us.

## II. Standard of Review.

Judicial review of an agency decision is controlled by Iowa Code section 17A.19(10). *Renda v. Iowa Civil Rights Comm'n*, 784 N.W.2d 8, 10 (Iowa 2010). "We will apply the standards of section 17A.19(10) to determine if we reach the same results as the district court." *Id.* "The district court may grant relief if the agency action has prejudiced the substantial rights of the petitioner and if the agency action meets one of the enumerated criteria contained in section 17A19(10)(a) through (n)." *Id.* Belle, as the petitioner, has the burden of proving the required prejudice and the invalidity of the agency action. *See* Iowa Code § 17A.19(8)(a).

## III. Discussion.

Belle maintains the IRGC violated Iowa Code section 99F.7(2)(c) when it awarded another applicant a new gambling license in Woodbury County while the Argosy casino was operating. Section 99F.7(2)(c) provides:

> A person awarded a new license to conduct gambling games on an excursion gambling boat or gambling structure *in the same county as another licensed excursion gambling boat or gambling structure* shall only be licensed to operate an excursion gambling boat or gambling structure that is located at a similarly situated site and operated as a substantially similar facility as any other excursion gambling boat or gambling structure in the county.

(Emphasis added.) The first question is whether Belle was licensed in April 2013 to operate the Argosy casino when the IRGC announced the award of a gambling license to a new third party for operation of a land-based casino. If Belle was licensed for the 2013–2014 license period after failing to comply with the conditions set for its 2012–2013 license and after failing to submit a sufficient renewal application for 2013–2014, we consider whether the statute in question applies to operators and conductors of gambling establishments alike. Lastly, we consider whether Belle was afforded due process throughout the proceedings.

### A. Was Belle Licensed in April 2013?

Belle and MRHD's 2012–2013 license renewal application contained an operating agreement whose terms included an expiration date of July 6, 2012, and the IRGC issued a conditional license to the two parties that was valid until June 7, 2012. Beginning at the June 7, 2012 meeting, the commission repeatedly voted to conditionally extend the Argosy license until March 31, 2013, pending the submission of an operating agreement between Belle and MRHD. However, Belle and MRHD never fulfilled the imposed conditions. At the August 23, 2012 meeting, the IRGC announced that without an operating agreement between the parties, the IRGC could not issue a license to conduct gambling games. Vice Chair Seyfer then stated that the situation was governed by Iowa Code section 17A.18(2) and, as such, the license would continue by operation of law until "a hearing has been set by the Commission to show cause why the license should not be continued." When Belle's legal representative contacted the IRGC about the need to file an application for license renewal for the 2013–

2014 year, the commission administrator indicated it was not necessary because the "Argosy has a license by operation of law."

Iowa Code section 17A.18(2) provides:

> When a licensee has made *timely and sufficient* application for the renewal of a license or a new license with reference to any activity of a continuing nature, the existing license does not expire until the application has been finally determined by the agency, and, in case the application is denied or the terms of the new license limited, until the last day for seeking judicial review of the agency order or a later date fixed by order of the agency or the reviewing court.

(Emphasis added.) The commission as a whole later found that the 2012–2013 application had been "insufficient" to trigger the protections of section 17A.18(2) because it did not contain an operating agreement for the entire term of the licensing year. Belle challenges this interpretation of 17A.18(2).

Belle maintains the IRGC has not been vested with the power to interpret Iowa Code section 17A.18, and the appellees do not disagree. Thus, we may reverse the agency's interpretation "[b]ased upon an erroneous interpretation of a provision of law" because "interpretation has not clearly been vested by a provision of law in the discretion of the agency." *See id.* § 17A.19(10)(c). In other words, we will not give deference to the agency's interpretation, and we will substitute our judgment for that of the commission if we conclude the IRGC made an error of law. *See Renda*, 784 N.W.2d at 14–15.

Belle maintains the IRGC's interpretation of "sufficient" within Iowa Code section 17A.18(2) is erroneous because "timely and sufficient" does not and cannot mean that only those applications worthy of being approved trigger the protection of the statute. Belle further maintains that such an interpretation would

require a final determination of the application before one would know whether an application was "sufficient" to trigger section 17A.18(2). We disagree.

We understand the statutory term "sufficient" to mean complete on its face. Iowa Administrative Code rule 491-1.5(3) pertains to "renewal application[s] for excursion gambling boat or gambling structure license" and requires, "This form shall contain, at a minimum, the full name of the applicant, annual fee, distribution to qualified sponsoring organizations, table of organization, internal controls, operating agreement, hours of operation, casino operations, Iowa resources, contracts, guarantee bond, notarized certification of truthfulness, and gambling treatment program." Contrary to Belle's assertion, determining whether a party has submitted an application that contains at least the minimum requirements of rule 491-1.5(3) does not necessitate a final determination by the commission. The IRGC has great discretion in deciding to whom to award a gambling license. *See* Iowa Code § 99F.4(1) (giving the commission the power to "investigate applicants and determine the eligibility of applicants for a license and *to select among competing applicants for a license the applicant which best serves the interests of the citizens of Iowa*" (emphasis added)). As the commission has shown, it can determine whether an application is sufficient without wielding this discretion. Here, Belle's 2012–2013 application was insufficient on its face—a fact Belle and MRHD understood and pointed out to the commission on the first page of the application when they "acknowledge[d] that they currently have an operating agreement in effect through July 6, 2012 as provided herein and that renewal or extension of an operating agreement pursuant to Iowa Code Chapter 99F through the applicable time period of the

requested license is necessary." Insofar as the IRGC interpreted "sufficient application" to mean one that, on its face, fulfills the requirements of rule 491-1.5(3), we cannot say this interpretation is erroneous. *See id.* § 17A.19(10)(c); *see also Tuerk v. State Dep't of Licensing*, 864 P.2d 1382, 1386 (Wash. 1994) (holding the failure of a realtor to include home address on renewal application, as required by agency, rendered the application insufficient).

Belle's 2013–2014 application, filed in December 2012, was also insufficient on its face as it also failed to include an operating agreement with a QSO. Belle attempts to characterize this failure as a result of its reliance on the statements by a commissioner and an administrator that Belle had an ongoing license as an operation of law and did not need to file a renewal application. However, Belle did file a renewal application, once again without the support of MRHD. MRHD has made it clear that it intended to let its license to conduct gambling games at the Argosy lapse and purposefully did not sign the Argosy renewal application when it was asked by Belle. In spite of a commissioner's and an administrator's reference to a license by "operation of law," Belle appeared to understand the need for a renewal application for the 2013–2014 term. However, Belle did not submit a complete application, and Belle's inability or failure to submit a complete application resulted in the denial of the application.

Neither Belle's 2012–2013 renewal application nor its 2013–2014 application for a license for the Argosy was "sufficient," and as a result, neither triggered the protection of section 17A.18(2). Therefore, Belle was no longer licensed to operate the Argosy in April 2013 when the IRGC awarded the new gambling license to a land-based casino in the county. Because Belle was no

longer licensed when the new license was issued in April 2013, the IRGC did not violate section 99F.7(2)(c), which requires new licensees to "operate an excursion gambling boat or gambling structure that is located at a similarly situated site and operated as a substantially similar facility as any other excursion gambling boat or gambling structure in the county."[6] Because we find section 99F.7(2)(c) is not applicable here, we do not need to decide whether section 99F.7(2)(c) applies to operators and conductors alike, and we decline to consider the issue.

### B. Is Relief Warranted Because of the IRGC's Inconsistent Actions?

Despite the insufficiency of Belle's renewal applications to operate the Argosy, the IRGC allowed Belle to operate the riverboat for almost two years without a license. On appeal, the IRGC minimizes one commissioner and the administrator's references to a license "by operation of law" as "comments made by an individual commissioner or staff member" as opposed to official actions of the commission. The IRGC maintains it cannot be bound by an individual's actions because the commission may only act by voting upon positions at a public meeting following appropriate notice, and three of the five commissioners must concur for any motion to carry. *See* Iowa Admin Code. r. 491-1.2(2), (3)(b); *see also Alfredo v. Iowa Racing & Gaming Comm'n*, 555 N.W.2d 827, 837 (Iowa

---

[6] Even if we accept Belle's arguments that (1) Belle had a valid license to operate the Argosy when the IRGC awarded SCE a license to operate the Hard Rock and (2) section 99F.7(2)(c) applies to operators and conductors alike, we fail to see the harm of which Belle complains or the need for a remedy. Section 99F.7(2)(c) is meant to give notice to a new licensee that if there is more than one casino in the same county, they are to be *operated* at the similar site and facility. We do not view this statute as providing protection to a current licensee. Here, the Argosy and the new Hard Rock casino were never open for business at the same time. At all times, the Belle could have sought to convert its riverboat license to a land-based structure as provided by Iowa Code section 99F.4D.

1996) (finding that approval by commission staff member does not constitute commission approval of agreement). The record supports the IRGC's characterization insofar as one commissioner and later, an administrator, stated Belle had a license by operation of law. The statements were made without the commission voting on the matter. Yet the commission as a whole did allow Belle to continue operating the Argosy for approximately two years after its operating agreement with MRHD expired. The commission continued to regulate the gambling operations at the Argosy in accordance with its mandate from the legislature although it had not granted Belle's applications to renew its license for the Argosy.

Iowa Code section 17A.19(10)(h) allows a reviewing court to "reverse, modify, or grant other appropriate relief from the agency action" where the "substantial rights of the person seeking judicial relief have been prejudiced because the agency action" is "[a]ction other than a rule that is inconsistent with the agency's prior practice or precedents, unless the agency has justified that inconsistency by stating credible reasons sufficient to indicate a fair and rational basis for the inconsistency." Belle has the burden of establishing that its substantial rights were prejudiced by the commission's inconsistent actions. *See Hill v. Fleetguard, Inc.*, 705 N.W.2d 665, 671 (Iowa 2005).

As the IRGC and district court have both found, Belle was not prejudiced—but rather received a substantial benefit—by being allowed to continue to operate the Argosy during the two years its applications were insufficient to support a renewal license. If the IRGC had denied the renewal application in July 2012 as it did the following year, the Argosy would have been

closed then rather than in July 2014. Instead, Belle was allowed to continue operating a casino from July 2012 to July 2014—a privilege Belle indisputably wanted.

Belle maintains it was prejudiced because the delay in closing the Argosy caused Belle to postpone its request for a contested hearing and judicial review of the IRGC's decision to deny its 2013–2014 application. Belle has not explained how an earlier review of the IRGC's decision to deny its application would have changed the result. Belle's 2013–2014 renewal application did not include an operating agreement and no QSO joined the application. As we stated above, the deficiencies within the application were not a result of any IRGC action. In the contested case proceeding and the petitions on judicial review, the denial of the renewal application has been upheld, and there is no indication this result would be otherwise if the reviews had occurred sooner.

Although the IRGC may have acted inconsistently, Belle has not established that its substantial rights were prejudiced, so no relief is warranted.

### C. Has Belle's Right to Due Process Been Violated?

Belle maintains the IRGC violated its right to due process because "[v]ery long before the IRGC offered Belle any process by which to contest of the deprivation of its license, the IRGC had already made up its mind that Belle would lose in those proceedings."[7]

---

[7] Belle requested an administrative law judge (ALJ) preside over the contested case hearing regarding the IRGC's denial of its renewal application to operate the Argosy. The commission denied Belle's request, which was within its power to do. *See* Iowa Admin. Code r. 491-4.22 ("Contested case hearings may be heard directly by the commission. The commission, or the administrator, shall decide whether it will hear the appeal or whether the appeal will be heard by an administrative law judge who shall serve as the presiding officer."). According to the contested case ruling, an ALJ was

First, Belle maintains the IRGC violated its right to due process when the commission did not renew Belle's license to operate gambling games at the Argosy casino. "The holding of a license in a privilege." Iowa Admin. Code r. 491-5.1. "The burden of proving qualifications for the privilege to receive any license is on the licensee." *Id.* "A licensee must accept all risks of adverse public notice or public opinion, embarrassment, criticism, or financial loss that may result from action with respect to a license." *Id.* When a gambling license is first issued, it is for a period of not more than three years. Iowa Code § 99F.7(1). Thereafter, gambling licenses must be renewed annually. *See id.* § 99F.7(2)(a). The commission is tasked with "select[ing] among competing applicants for a license the applicant which best serves the interests of the citizens of Iowa." *Id.* § 99F.4. It considers multiple criteria when deciding whether to issue a license to conduct gambling, including "such other factors as may arise in the circumstances presented by a particular application." *See* Iowa Admin. Code r. 491-1.7. With these principals in mind, we have not found any authority—nor has Belle provided any—that indicates a gambling license holder has a right or expectation of renewal. Belle had the burden of proving its qualifications for the renewal, yet it never submitted a complete renewal application for the IRGC's

---

assigned to "render initial rulings on prehearing matters, conduct a prehearing conference, and assist the Commission at hearing and in drafting a written decision for the Commission." Additionally, pursuant to Iowa Code section 17A.11(3), Belle could "timely request the disqualification of a person as a presiding officer by filing a motion supported by an affidavit asserting an appropriate ground for disqualification." Appropriate grounds include "bias, prejudice, interest, or any other cause provided in this chapter." Iowa Code § 17A.11(2). However, Belle failed to do so and any claim regarding bias has not been preserved for our review. *See DeVoss v. State*, 648 N.W.2d 56, 63 (Iowa 2002) (stating that "one party should not ambush another by raising issues on appeal" which were not previously decided).

consideration. Moreover, Belle asked for and received a contested case hearing on this issue and judicial review of the commission's decision.

Insofar as Belle is claiming it did not receive due process regarding the award of the new license—the one that SCE and MRHD received for the new land-based casino—Belle never requested a contested case hearing on the IRGC's award of the new license. "The fundamental requirement of due process is the *opportunity* to be heard at a meaningful time and in a meaningful way." *Silva v. Emp't Appeal Bd.*, 547 N.W.2d 232, 234 (Iowa Ct. App. 1996) (emphasis added). As our supreme court has quoted with approval:

> In general, procedural due process demands that whenever a state agency determines the legal rights, privileges, or duties of a specific party based upon that party's particular facts and circumstances, the state agency is bound to provide an opportunity for an evidentiary hearing. Stated differently, a state must *usually* provide an individual with an opportunity for a hearing of some sort when it takes action of *particular applicability,* defining a person's rights, on the basis of adjudicative facts. As noted earlier, adjudicative facts are individualized facts concerning the circumstances of the specific party—the facts of the particular case. "Adjudicative facts are the facts about the parties and their activities, businesses, and properties. . . [T]hey usually answer the questions of who did what, where, when, how, why, with what motive or intent; adjudicative facts are the kind of facts that go to a jury in a jury case."

*Hollinrake v. Iowa Law Enf't Acad.*, 452 N.W.2d 598, 602 (Iowa 1990) (quoting Bonfield, *The Definition of Formal Agency Adjudication Under the Iowa Administrative Procedure Act*, 63 Iowa L. Rev. 285, 323 (1977)). The IRGC has a process by which an applicant may request a contested case hearing. *See* Iowa Admin. Code r. 491-4.10 ("A license applicant . . . may appeal a denial, suspension, or ruling. An appeal must be made in writing to the office of the gaming representative or the commission office in Des Moines."); *see also id.* r.

491-4.20. Instead, Belle chose to file multiple judicial review petitions with the district court, and each of these petitions were considered in turn.

The IRGC has discretion in deciding to whom it awards a gambling license and which licenses it renews. *See* Iowa Code § 99F.4(1); *see also* Iowa Admin. Code r. 491-1.7. Although Belle disagrees with the IRGC's decision to award licenses to conduct and operate games at the Hard Rock casino, Belle has not shown that the decision violated Belle's right to due process. The IRGC publicly announced and voted on whether to consider new parties for a gambling license as required by the Iowa Code and the rules of the commission. *See* Iowa Code § 21.5*; see also* Iowa Admin Code. r. 491-1.2(2). Belle was at the meetings in which the announcements were made and was heard on the issues. Belle made its own applications and has not cited any authority which prevents or circumscribes the IRGC's ability to consider new applicants. For these reasons, Belle has not established that the IRGC violated its right to due process.

**IV. Conclusion.**

Belle's incomplete license renewal applications were not sufficient to trigger the protections of Iowa Code section 17A.18(2). Because section 17A.18(2) was not triggered by Belle's incomplete applications, Belle was not licensed to operate gambling operations in April 2013 when the IRGC announced the award of the new licenses for the land-based casino in Woodbury County. Thus, the IRGC did not violate Iowa Code section 99F.7(2)(c) when it awarded new gambling licenses to MRHD and SCE. Additionally, the IRGC did not violate

Belle's right to due process when it denied its renewal applications or when it awarded the new gambling license to another applicant. We affirm.

**AFFIRMED.**